NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000570**
**15-MAY-2014**
**07:49 AM**

NO. CAAP-11-0000570

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JOHN E. CUSTINO, JR., Claimant-Appellant,
v.
STATE OF HAWAI'I, DEPARTMENT OF TRANSPORTATION,
Employer-Appellee/Self-Insured


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2008-258 (2-02-40713))


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise, and Leonard, JJ.)

Claimant-Appellant John E. Custino, Jr. (**Custino**)
appeals from a Labor and Industrial Relations Appeals Board
(**LIRAB**) May 12, 2011 Decision and Order that affirmed in part,
modified in part, and vacated in part the Director of the
Department of Labor and Industrial Relations' (**the Director**)
Decision and Amended Decision regarding benefits for temporary
total disability (**TTD**) for an injury that Custino suffered while
working as an employee for Employer-Appellee State of Hawai'i,
Department of Transportation (**DOT**). Custino also appeals from
the LIRAB'S June 28, 2011 Order Denying Motion for
Reconsideration.

I.   **Background Facts**

On July 11, 2002, Custino sustained a work injury to his neck and lower back while working for the DOT.  The injury occurred when the truck he was driving was rear-ended by a private vehicle, which struck the attenuator (special bumper) of Custino's truck while it was stopped.  Custino sought medical treatment for his injuries on July 15, 2002 with Dr. Richard Kimura (**Dr. Kimura**), an orthopedic surgeon, who was Custino's attending physician throughout his treatment.  Custino also visited various other doctors over the course of his treatment. On August 14, 2002, a WC-1 Employer's Report of Industrial Injury dated July 22, 2002 was filed at the Department of Labor and Industrial Relations, Disability Compensation Division (**DCD**); the DOT subsequently accepted liability for Custino's workers' compensation claim for his shoulders and back.

In a letter to the DOT dated April 15, 2004, Dr. Kimura stated that Custino could not return to permanent, regular work as a heavy truck driver, and he also advised that Custino not engage in any "repetitive bending, squatting, turning, and bending of his neck."  On June 1, 2004, the DOT informed Custino that due to him being precluded from regular work, his options going forward were either participating in the DOT's Return to Work Priority Program (**RTWPP**), resigning, or retiring.  Custino chose to participate in the RTWPP, though ultimately no position could be identified for him in the program given his education, experience, training, and physical requirements.  Thus, he was discharged from his job with the DOT as a heavy truck driver (effective January 31, 2005) and advised to contact the DCD to inquire about his right to participate in vocational rehabilitation services.  Custino completed an Employee Retirement System (**ERS**) application, and he selected April 1, 2005 as his effective retirement date for ordinary retirement.

Custino went through two periods of vocational rehabilitation:  one from February 3, 2005 to August 10, 2005, and the other from September 16, 2005 to October 27, 2005.

2

However, both vocational rehabilitation periods were terminated due to the infeasibility of Custino finding suitable, gainful employment. On January 16, 2008, the DOT sent Custino and the Director a letter notifying them that the DOT would be terminating Custino's TTD benefits effective January 31, 2008 because Custino would be receiving retirement benefits at that time. The DOT also stated that it would be seeking a credit/reimbursement of TTD benefits paid after Custino's April 1, 2005 retirement date.

A hearing was held at the DCD on March 3, 2008 on the issue of permanent disability and temporary total disability, specifically addressing the issues of whether "the injury of 7/11/2002 result[ed] in any permanent partial disability or disfigurement, or permanent total disability" and whether the DOT was "due any credit on any payments made for temporary total disability." The Director issued a Decision on April 30, 2008. On June 6, 2008, the Director issued an Amended Decision, awarding Custino TTD benefits from July 18, 2002 through October 27, 2005 (pursuant to HRS § 386-31(b)[1]). The Director rejected the DOT's request for credit on TTD benefits that Custino received while simultaneously receiving retirement benefits and ordered the DOT to pay weekly permanent total disability (**PTD**)

---

[1]     HRS § 386-31(b) (Supp. 2013) states, in relevant part, the following:

§ 386-31  Total disability.
. . . .
(b) Temporary total disability. Where a work injury causes total disability not determined to be permanent in character, the employer, for the duration of the disability, but not including the first three calendar days thereof, shall pay the injured employee a weekly benefit at the rate of sixty-six and two-thirds per cent of the employee's average weekly wages, subject to the limitations on weekly benefit rates prescribed in subsection (a), or if the employee's average weekly wages are less than the minimum weekly benefit rate prescribed in subsection (a), at the rate of one hundred per cent of the employee's average weekly wages. . . .

benefits (pursuant to HRS § 386-31(a)[2]) from October 28, 2005 onward "for as long as the claimant is so disabled."

The DOT appealed this decision to the LIRAB, and on July 21, 2008, the LIRAB entered a Pretrial Order stating that the issues to be determined were: (1) the period of TTD resulting from Custino's work injury; (2) whether Custino was permanently and totally disabled as a result of the work injury; and (3) if he was not, then what was the extent of permanent partial disability (**PPD**) resulting from the work injury. The Director's case file was made part of the record before the LIRAB. The LIRAB held an evidentiary hearing on April 21, 2009.

On May 12, 2011, the LIRAB entered a Decision and Order that affirmed in part, modified in part, and vacated in part the Director's April 30, 2008 Decision and June 6, 2008 Amended Decision. The LIRAB found that Custino was temporarily and totally disabled pursuant to HRS § 386-31(b) beginning July 18, 2002 through February 2, 2005. It also found Custino temporarily and totally disabled pursuant to HRS § 386-25(d) (Supp. 2013)[3] during the vocational rehabilitation periods of February 3, 2005 to August 10, 2005 and September 16, 2005 to October 27, 2005.[4]

---

[2] HRS § 386-31(a) (1993) states, in relevant part, the following:

**§ 386-31 Total disability.**
(a) Permanent total disability. Where a work injury causes permanent total disability the employer shall pay the injured employee a weekly benefit equal to sixty-six and two-thirds per cent of the employee's average weekly wages . . . .

[3] HRS § 386-25(d) states, in relevant part, the following:

**§ 386-25 Vocational rehabilitation.**
. . . .
(d) A provider shall submit an initial evaluation report of the employee to the employer and the director within forty-five days of the date of referral or selection. The evaluation shall determine whether the employee requires vocational rehabilitation services to return to suitable gainful employment, identify the necessary services, and state whether the provider can provide these services. . . .

[4] The LIRAB noted that "[a]lthough [the DOT] paid [Custino] TTD benefits beginning August 11, 2005 through September 15, 2005, the record does (continued...)

The LIRAB awarded TTD to Custino, "based on disability certification provided by Dr. Kimura which is part of the record on appeal," for the following periods: March 13, 2008 to April 10, 2008; June 12, 2008 to July 10, 2008; August 7, 2008 to November 6, 2008; and January 8, 2009 to February 5, 2009. The LIRAB also concluded that Custino could be entitled to TTD after February 5, 2009 if there was proper disability certification or if he enrolled in a vocational rehabilitation program, and it held that vocational rehabilitation would not preclude him from receiving his vested retirement benefits or receiving TTD benefits pursuant to HRS § 386-25(d). The LIRAB concluded that it was premature to make a determination about PTD or the extent of PPD because Custino had not exhausted his options for finding work through the vocational rehabilitation process before the determination was made to close those services; as such, the LIRAB stated that Custino should be given the opportunity to re-enroll in vocational rehabilitation in order to find himself suitable employment.

On June 9, 2011, Custino filed a Motion for Reconsideration of the LIRAB's May 12, 2011 Decision and Order, arguing that the LIRAB should amend its Decision and Order to award TTD benefits to him for the period of July 18, 2002 through February 5, 2009 because "1) disability certifications were timely and contemporaneously completed by [Custino's] attending physician for all the 'missing' periods specified in the Decision and 2) such disability certifications were submitted to [the DOT] on a regular and timely basis." The LIRAB denied Custino's Motion for Reconsideration on June 28, 2011. On July 27, 2011, Custino filed a timely notice of appeal.

II. **Points of Error on Appeal**

Custino raises the following points of error on appeal: (1) "[t]he LIRAB's Decision and Order of May 12, 2011 declining

---

[4](...continued)
not include any disability certification supporting a finding of TTD for that period."

to award TTD benefits for the specified periods was clearly erroneous and wrong"; and (2) "[t]he LIRAB's refusal to take the new evidence proffered by Claimant in his Motion for Reconsideration and to amend its Decision and Order based on the new evidence was an abuse of discretion."

## III. Standards of Review

The Hawaiʻi Supreme Court has stated that the following standard of review is applicable regarding an appeal of a LIRAB decision:

> Appellate review of a LIRAB decision is governed by HRS § 91-14(g) (1993), which states that:
>
> > Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> >
> > (1) In violation of constitutional or statutory provisions; or
> >
> > (2) In excess of the statutory authority or jurisdiction of the agency; or
> >
> > (3) Made upon unlawful procedure; or
> >
> > (4) Affected by other error of law; or
> >
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> >
> > (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> We have previously stated:
>
> > FOFs are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.
> >
> > COLs are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.
> >
> > A COL that presents mixed questions of fact and law is reviewed under the

> clearly erroneous standard because the
> conclusion is dependent upon the facts and
> circumstances of the particular case. When
> mixed questions of law and fact are
> presented, an appellate court must give
> deference to the agency's expertise and
> experience in the particular field. The
> court should not substitute its own
> judgment for that of the agency.

Igawa v. Koa House Rest., 97 Hawai'i 402, 405-06, 38 P.3d 570, 573-74 (2001) (citations, internal quotation marks, and original brackets omitted).

The court's articulation of the "clearly erroneous" standard is as follows:

> An FOF or a mixed determination of law and fact
> is clearly erroneous when (1) the record lacks
> substantial evidence to support the finding or
> determination, or (2) despite substantial evidence to
> support the finding or determination, the appellate
> court is left with the definite and firm conviction
> that a mistake has been made. We have defined
> substantial evidence as credible evidence which is of
> sufficient quality and probative value to enable a
> person of reasonable caution to support a conclusion.

In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000) (citations and internal quotation marks omitted).

Motions for reconsideration are reviewed for abuse of discretion. See Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992); Bocalbos v. Kapiolani Med. Ctr. for Women & Children, 93 Hawai'i 116, 126, 997 P.2d 42, 52 (App. 2000) (stating that "[i]t has been consistently held that rehearings before administrative bodies are addressed to their own discretion, and only a showing of the clearest abuse of discretion could sustain an exception to that rule" (citations and internal quotation marks omitted)). An abuse of discretion occurs when the [LIRAB] has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." See Amfac, Inc., 74 Haw. at 114, 839 P.2d at 26 (citation omitted); Bocalbos, 93 Hawai'i at 126, 997 P.2d at 52. The purpose of a motion for reconsideration is not "to relitigate old matters" though. Briggs v. Hotel Corp. of Pac., Inc., 73 Haw. 276, 287 n.7, 831 P.2d 1335, 1342 n.7 (1992). Rather, it "is to allow the parties

to present new evidence and/or arguments that could not have been presented" in an earlier proceeding. See Amfac, Inc., 74 Haw. at 114, 839 P.2d at 27 (citations omitted).

IV. **Discussion**

A. **The LIRAB's May 12, 2011 Decision and Order Declining to Award Certain Periods of TTD Benefits**

Custino argues that the LIRAB clearly erred when in its May 12, 2011 Decision and Order it "declin[ed] to award TTD for [certain] specified periods due to lack of disability certification." Specifically, Custino asserts that the LIRAB should have awarded TTD benefits for the following "gap" periods: August 11, 2005 through September 15, 2005; October 28, 2005 through March 12, 2008; April 11, 2008 through June 11, 2008; July 11, 2008 through August 6, 2008; and November 7, 2008 through January 7, 2009. Custino claims that "the reliable, probative and substantial evidence supports a finding" that TTD was warranted for these "gap" periods. We disagree.

Aside from the initial, undisputed July 18, 2002 through February 2, 2005 period and the two vocational rehabilitation periods, the LIRAB based its award of TTD benefits for the other specified periods in its Decision and Order "on disability certification provided by Dr. Kimura which [w]as part of the record on appeal." In the administrative record at the time of the trial on April 21, 2009, there were six disability certificates submitted by Dr. Kimura, which correspond with the periods in which TTD was awarded. However, the record at the time lacked any disability certificates to support a TTD award for the "gap" periods.

Although Dr. Kimura had filled out various WC-2 Physician's Reports that were included in the record, they did not contain sufficient information to support a determination that Custino should be entitled to TTD benefits. HRS § 386-96 (Supp. 2013)[5] governs the reports of physicians and requires that

_____

[5]     HRS § 386-96 states, in relevant part, the following:

(continued...)

one rendering "service to an injured employee shall make a report of the injury and treatment on forms prescribed by and to be obtained from the [Department of Labor and Industrial Relations]," which would include the WC-2 Physicians Report. Among the HRS § 386-96 requirements is that physicians treating the injured worker report information regarding "the dates of disability, any work restrictions, and the return to work date." HRS § 386-96(a)(2); see also Hawaii Administrative Rules (**HAR**) § 12-15-80(a)(3)(E) (West 2014) (stating that interim WC-2 reports should be submitted to the employer and should include, _inter alia_, the "[d]ates of disability, work restrictions, if

---

[5](...continued)

**§ 386-96  Reports of physicians, surgeons, and hospitals.** (a) Any physician, surgeon, or hospital that has given any treatment or rendered any service to an injured employee shall make a report of the injury and treatment on forms prescribed by and to be obtained from the department as follows:

(1) Within seven days after the date of first attendance or service rendered, an initial report shall be made to the department and to the employer of the injured employee in the manner prescribed by the department;

(2) Interim reports to the same parties and in the same manner as prescribed in paragraph (1) shall be made at appropriate intervals to verify the claimant's current diagnosis and prognosis, that the information as to the nature of the examinations and treatments performed is complete, including the dates of those treatments and the results obtained within the current reporting period, the execution of all tests performed within the current reporting period and the results of the tests, whether the injured employee is improving, worsening, or if "medical stabilization" has been reached, the dates of disability, any work restrictions, and the return to work date. When an injured employee is returned to full-time, regular, light, part-time, or restricted work, the attending physician shall submit a report to the employer within seven calendar days indicating the date of release to work or medical stabilization; and

(3) A final report to the same parties and in the same manner as prescribed in paragraph (1) shall be made within seven days after termination of treatment.

No physician, surgeon, or hospital that has given any treatment or rendered any service to an injured employee shall be required to provide any additional reports not otherwise mandated by this section.

any, and return to work date").

This information was not included on Dr. Kimura's WC-2 forms, which precluded the LIRAB from grounding in evidence any determination regarding TTD based upon those forms. Claimants should not be denied benefits under Hawai'i workers' compensation law simply because their physician failed to properly enter the requisite report in the prescribed manner. However, the LIRAB needs sufficient evidence to render a TTD decision. Without such evidence, it was not clearly erroneous for the LIRAB to deny awarding TTD benefits for the "gap" periods. See In re Water Use Permit Applications, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000) (showing that clear error only exists if "despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made" (citation omitted)). Therefore, the LIRAB's May 12, 2011 Decision and Order denying the award of TTD benefits for the so-called "gap" periods (August 11, 2005 through September 15, 2005; October 28, 2005 through March 12, 2008; April 11, 2008 through June 11, 2008; July 11, 2008 through August 6, 2008; and November 7, 2008 through January 7, 2009) was not "clearly erroneous and wrong."

B.    **The LIRAB's Denial of Custino's Motion for Reconsideration**

Custino argues that "[t]he LIRAB's refusal to take the new evidence proffered by [Custino] in his Motion for Reconsideration and to amend its Decision and Order based on the new evidence was an abuse of discretion." The new evidence that Custino refers to is Dr. Kimura's disability certifications for the gap periods. Custino argues that, despite this evidence being available before the April 21, 2009 hearing, it should still be considered new evidence for the purposes of his Motion for Reconsideration because the LIRAB's Decision and Order created a new issue that was not the focus of the case at trial — namely, the issue of TTD benefits after October 27, 2005. Custino makes the following argument:

> At trial, the focus of the case was whether

> [Custino] was entitled to a determination of PTD or
> PPD after closure of [vocational rehabilitation] on
> October 27, 2005. Both parties agreed that [Custino]
> was entitled to TTD benefits up until that date and
> thus the only issue was whether he was permanently
> totally or partial [sic] disabled after that. The
> existence of disability certifications was not an
> issue in dispute. When the [LIRAB] held that the
> determination of permanent disability was premature
> and opened the issue of TTD after October 27, 2005, it
> shifted the focus of the case and in effect created a
> new issue of whether disability certifications existed
> in support of TTD for the three and a half year·period
> from October 28, 2005 through February 5, 2009.

Custino states that when the LIRAB shifted its focus, "the equities of the situation required that [he] be allowed to present evidence to address [this] issue that had not previously been raised" and that "[t]he disability slips were directly relevant to the new issue of TTD entitlement created by the" LIRAB's Decision and Order on May 12, 2011.

The DOT disagrees with Custino's characterization of the situation, arguing that he "was neither presenting new evidence nor making fresh arguments that could not have been presented or made at trial in his motion for reconsideration" and that he was essentially "attempt[ing] to relitigate matters that should have been addressed prior to the LIRAB's Decision and Order." The DOT first points to the LIRAB's July 21, 2008 Pretrial Order, which stated that one of the issues to be determined was "the period of temporary total disability resulting from the work injury of July 11, 2002." The DOT also references the Pretrial Order's medical reports submission deadline of March 10, 2009, arguing that Custino "was well aware that any medical evidence he wished to have reviewed by the LIRAB in making a determination . . . [about] the issue of temporary total disability benefits[] should have been submitted into the record" by that deadline.

Motions for reconsideration in front of the LIRAB are governed by HAR § 12-47-53 (West 2014)[6] and HRS § 386-87(d)

---

[6]     HAR § 12-47-53 governs the "[r]econsideration or reopening of [a] decision or order" and states, in relevant part, the following:

(continued...)

(1993).[7] HRS § 386-87(d) states, in pertinent part, that "the [LIRAB] may, upon the application of the director or any other party . . . reopen the matter and thereupon may take further evidence or may modify its findings, conclusions or decisions." The term "may" signals discretion on the part of the LIRAB, and thus Custino's Motion for Reconsideration is reviewed under an abuse of discretion standard. See Bocalbos, 93 Hawai'i at 126, 997 P.2d at 52.

As stated above, the purpose of a motion for reconsideration is not "to relitigate old matters," but rather generally "is to allow the parties to present new evidence and/or arguments that could not have been presented" in an earlier proceeding. See Amfac, Inc., 74 Haw. at 114, 839 P.2d at 27 (citations omitted); Briggs v. Hotel Corp. of Pac., Inc., 73 Haw.

---

[6](...continued)
     (a) In the absence of an appeal and within thirty days after mailing of a copy of the board's decision or order, the board may, upon the request of any party, or upon its own motion, reconsider or reopen the matter. If reopening is allowed, the board may take further evidence or may modify its decision or order. The time to initiate judicial review shall run from the date of mailing of the further decision if the matter has been reconsidered or reopened. If the request for reconsideration or reopening is denied, the time to initiate judicial review shall run from the date of mailing the denial decision.
     (b) The request for reconsideration or reopening shall be in writing and shall be served upon all parties. The request shall specify the reasons why reconsideration or reopening is warranted.
     (c) A hearing on the request for reconsideration or reopening may be held at the board's discretion.

[7]    HRS § 386-87(d) states the following:

**§ 386-87  Appeals to appellate board.**
 . . . .
     (d) In the absence of an appeal and within thirty days after mailing of a certified copy of the appellate board's decision or order, the appellate board may, upon the application of the director or any other party, or upon its own motion, reopen the matter and thereupon may take further evidence or may modify its findings, conclusions or decisions. The time to initiate judicial review shall run from the date of mailing of the further decision if the matter has been reopened. If the application for reopening is denied, the time to initiate judicial review shall run from the date of mailing of the denial decision.

276, 287 n.7, 831 P.2d 1335, 1342 n.7 (1992). However, as demonstrated in the Intermediate Court of Appeals (**ICA**) decision in Bocalbos, there is another circumstance in which a motion for reconsideration potentially should be granted in workers' compensation cases: when there has been a shift in the focus of the trial, and the evidence in the motion for reconsideration specifically addresses this new focus. See Bocalbos, 93 Hawai'i at 126-27, 997 P.2d at 52-53.

In Bocalbos, the LIRAB initially approved the claimant's requested medical treatment in its Decision and Order. Id. at 123, 997 P.2d at 49. However, in response to the employer's motion for reconsideration, the LIRAB amended its decision to exclude orthodontic, orthopedic, and prosthodontic treatments from the work-related and compensable temporomandibular joint (**TMJ**) condition on the basis that those treatments were unrelated to the TMJ disorder. Id. Bocalbos filed a motion for reconsideration, but the LIRAB rejected this motion; Bocalbos then filed a motion to reopen the case to take further evidence, but (again) the LIRAB issued a denial, doing so without any explanation. Id. The evidence that Bocalbos sought to admit included various letters related to the LIRAB's change in evidentiary focus, and it drew connections between the disallowed treatments (orthodontic, orthopedic, and prosthodontic) and the TMJ disorder. Id. at 125-29, 997 P.2d at 51-55. Bocalbos subsequently appealed to the ICA. Id. at 123, 997 P.2d at 49.

The ICA held that the LIRAB abused its discretion in denying the motion, basing its ruling, in part at least, on the fact that the LIRAB offered no "reasonable articulation for its refusal" to consider Bocalbos's further evidence regarding the connection between the disallowed treatments and the TMJ disorder. Id. at 127, 997 P.2d at 53. It stated that "[t]here is no cogent explanation for the Board's failure to consider [this evidence] in light of [its] direct effect on the correctness of the Board's finding and conclusion." Id. at 126,

13

997 P.2d at 52. The court's decision also noted the "change in the Board's focus of the evidence," stemming from its denial of the various treatments that it had initially approved. Id. at 126-27, 997 P.2d at 52-53. Therefore, Bocalbos provides that when there has been a LIRAB-induced shift in the focus of a trial, and when the evidence in a reconsideration motion specifically addresses this new focus and has a "direct effect on the correctness" of a LIRAB decision, then the LIRAB should at least afford consideration of that evidence, particularly "[i]n the absence of any reasonable articulation for its refusal." See id.

Turning to the present case, it appears that there was a change in the focus of the trial induced by the LIRAB. This is because, initially, the case was focused on whether Custino was entitled to PTD or PPD after the closure of the second vocational rehabilitation session on October 27, 2005. However, the LIRAB then issued its Decision and Order holding that a determination regarding permanent disability was premature. This shifted the focus from permanent disability after October 27, 2005 to that regarding Custino's entitlement to TTD for that period. Furthermore, the evidence in Custino's Motion for Reconsideration (in the form of disability certificates signed by Dr. Kimura) specifically addressed the issue of TTD benefits and had a "direct effect on the correctness" of the LIRAB's decision as to which time periods Custino was actually entitled to TTD benefits. The LIRAB also failed to articulate any reason for its refusal to consider the evidence proffered by Custino in the Motion for Reconsideration, which lends further credence to the notion that this situation parallels that of Bocalbos and that there was in fact an abuse of discretion by the LIRAB.

Additionally, the "equities of the situation" were affected by the fact that the disability certifications were all contemporaneously written by Dr. Kimura (there was no retroactive certification after the fact), Custino had timely provided these certificates to his employer, the DOT, on a regular basis, and

Custino had received TTD benefits from DOT based on those certificates. The lack of these certificates in the LIRAB's record was a technical deficiency, which was not anticipated to be an issue under the circumstances of this case. This conclusion is also in line with the "humanitarian nature" of the workers' compensation act because it allows Custino credit for TTD benefits that he had already properly received based on the certifications provided to his employer and otherwise would have been awarded had the certificates been included in the LIRAB's initial record. See Akamine v. Hawaiian Packing & Crating Co., 53 Haw. 406, 409, 495 P.2d 1164, 1166 (1972).

Although the LIRAB's July 21, 2008 Pretrial Order stated that one of the issues to be determined was "the period of temporary total disability resulting from the work injury of July 11, 2002," the other two issues concerned PTD and PPD, and the Director's Amended Decision had already determined that Custino was permanently disabled "as of 10/28/2005." Thus, the issue on appeal in front of the LIRAB appeared to be whether this permanent disability was "total" or "partial"; instead, however, the LIRAB held that a determination regarding permanent disability was altogether premature. This ruling was surprising to Custino due to the fact that Custino had already had closure of his second vocational rehabilitation period due to the infeasibility of him finding suitable, gainful employment.

Finally, the DOT argues that the Pretrial Order's medical reports submission deadline of March 10, 2009 prohibited Custino from offering additional medical evidence beyond that deadline. The Bocalbos court dismissed a similar argument in that case, saying that this was not "relevant to Bocalbos's request to the Board to take further evidence or to modify its findings, conclusions or decisions as allowed by HRS § 386-87(d)." Bocalbos, 93 Hawai'i at 127 n.27, 997 P.2d at 53 n.27 (internal quotation marks and brackets omitted; emphasis in original). Accordingly, the LIRAB's refusal to consider the evidence that Custino proffered in his Motion for

Reconsideration, and to amend its Decision and Order based on that evidence, was an abuse of discretion; however, it was only error as to the disability certificates for the periods after October 27, 2005 because the LIRAB's shift in focus only pertained to the period after that date.

## VI. Conclusion

Based on the foregoing, we vacate in part and remand for further proceedings, with instructions that the LIRAB consider the disability certificates for the periods after October 27, 2005, and we affirm the remainder of the LIRAB's May 12, 2011 Decision and Order.

DATED: Honolulu, Hawai'i, May 15, 2014.

On the briefs:

Andrew A. Cheng
(Robinson & Chur)
for Claimant-Appellant

Gary N. Kunihiro
Shawn L.M. Benton
(Leong Kunihiro Lezy & Benton)
for Employer-Appellee,
. Self-Insured

Presiding Judge

Associate Judge

Associate Judge